# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KRYSTLE CHANTEL LUNA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:12-cv-00031** |
| v. | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on March 25, 2008, alleging that she had been disabled since January 2, 2006, due to Diabetes Mellitus Type I and Bipolar Disorder Type II. *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 56, 173. Plaintiff's application was denied both initially (TR 56) and upon reconsideration (TR 57). Plaintiff subsequently requested (TR 72) and received (TR 80) a hearing. Plaintiff's hearing was conducted on July 23, 2010, by Administrative Law Judge ("ALJ") William B. Churchill. TR 27. Plaintiff and Vocational Expert, Dr. Terry Vandermolen, appeared and testified. *Id.*

On August 25, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 13-25. Specifically, the ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since March 25, 2008, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: diabetes mellitus with early diabetic retinopathy; history of kidney stones; bipolar disorder; and history of cocaine abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the ability to sit for 6 hours, stand for 4 to 6, and walk for 4 to 6 hours in an 8-hour work day. She can lift 20 pounds occasionally and 10 pounds frequently as well as push or pull to that weight. She can

occasionally bend, climb, crawl, stoop, and squat but is precluded from climbing ladders or being exposed to unprotected heights and hazardous machinery. Mentally, the claimant can maintain concentration for extended periods and perform simple, routine tasks. She requires limited contact and interaction with co-workers, the public, and supervisors.

5.   The claimant has no past relevant work (20 CFR 416.965).

6.   The claimant was born on September 8, 1986 and was 21 years old, which is defined as a younger individual age 18-49, on the date the application was filled (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since March 25, 2008, the date the application was filed (20 CFR 416.920(g)).

TR 15-25.

On October 20, 2010, Plaintiff timely filed a request for review of the hearing decision.

TR 7. On January 30, 2012, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial

gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181

(6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's

---

[2] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to accord appropriate weight to the opinions of her treating mental health providers; (2) failed to properly weigh certain medical reports; (3) did not properly evaluate her credibility; (4) failed to find Plaintiff's generalized anxiety to be a severe impairment, failed to state why it was not found to be a severe impairment, and failed to consider all of Plaintiff's severe impairments; and (5) did not make a RFC finding consistent with the medical evidence. Docket No. 12-1 at 6-13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded the Opinions of Plaintiff's Treating Mental Health Providers

Plaintiff contends that the ALJ failed to accord appropriate weight to the opinions of her treating mental health providers. Docket No. 12-1 at 6. Specifically, Plaintiff contends that the ALJ erroneously gave "little weight" to the opinion of Dr. Barr, her treating psychiatrist, and further argues that the ALJ improperly omitted from his decision the portion of Dr. Barr's June 25, 2010 Medical Source Statement opinion finding that Plaintiff was "markedly limited in ability to respond appropriately to work situations and changes in a routine work setting." Docket No. 12-1 at 6-7; TR 644. Plaintiff contends that the ALJ therefore minimized her mental impairments. *Id.* at 7.

Defendant responds that the ALJ "complied with the relevant law, regulations, and rulings, and gave good reasons for not giving [Dr. Barr's] conclusory opinion controlling weight." Docket No. 17 at 9. Specifically, Defendant responds that the ALJ explicitly explained that Dr. Barr's opinion was inconsistent with medical evidence, was "based solely on Plaintiff's unreliable subjective reports," was not based on objective tests measuring Plaintiff's cognitive abilities, was inconsistent with Dr. Barr's own treating notes, and conflicted with Plaintiff's

ability to interact properly with her health providers. *Id.*, *citing* TR 23. Defendant contends that because Dr. Barr's opinion was inconsistent with the record and the ALJ gave good reasons for his findings, the ALJ properly accorded less than controlling weight to Dr. Barr's opinion. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

9

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(d) (emphasis added).  *See also* 20 CFR § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The ALJ, in his decision, discussed Dr. Barr as follows:

> With regard to concentration, persistence or pace, the claimant has mild difficulties.  There is no objective evidence that the claimant has any deficit in concentration, persistence, or pace.  Although the claimant's current psychiatrist opined that the claimant had diminished cognitive functioning due to her anxiety disorder and poor impulse control, his treatment notes consistently show that he evaluated her as functioning at the average intellectual level (Exhibit 21F; *see generally* Exhibit 20F).  In addition, there is no

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

evidence that he performed any of the standard tests for memory and concentration during his mental status examinations of the claimant, such as serial subtractions, suggesting that he did not think the tests would reveal significant deficits (*See generally* Exhibit 20F). Nevertheless, it is reasonable to conclude that the claimant's mental disorders could cause some limitation related to her ability to initiate, sustain, and complete tasks. Accordingly, the undersigned finds that the claimant has mild limitation in concentration, persistence, or pace.

. . .

She underwent evaluation by Centerstone psychiatrist Ralph Barr, M.D., on February 18, 2010 (Exhibit 20F/9-12). . . . Dr. Barr initiated Abilify to control her mood, Xanax for her anxiety and panic attacks, and trazodone to help her sleep (Exhibit 20F/9-12).

The claimant reported to Dr. Barr on March 10, 2010 that Abilify seemed to help but trazodone kept her awake (Exhibit 20F/6-7). Treatment notes show she had stable mood, depressed symptoms, and decreased stressors with insomnia, mild paranoia and some restlessness (Exhibit 20F/6-7). She exhibited anxious mood, appropriate affect, normal speech, fair impulse control, and average intelligence (Exhibit 20F/6-7).

On April 21, 2010, however, the claimant stated that she had had a "couple of nervous breakdowns" as well as severe anxiety, jitteriness, depressed mood, instability, poor impulse control, paranoia, and risky behavior (Exhibit 20F/4-5). She acknowledged that she had been arrested for a hit-and-run episode (Exhibit 20F/4-5). Dr. Barr increased her Xanax to three times daily, added Vistaril to help with anxiety, and increased her Abilify dosage (Exhibit 20F/4-5).

The claimant failed to show for her June 2, 2010 appointment. Nonetheless, Dr. Barre opined on June 25, 2010 that the claimant was moderately limited in her ability to understand, remember, and carryout simple tasks, precluded from performing complex tasks, moderately limited in her ability to interact with the public, and markedly limited in her ability to interact with coworkers and supervisors (Exhibit 21F). Dr. Barr noted that the claimant had reduced cognitive functioning due to severe anxiety disorder, poor impulse control, and inability to filter (Exhibit 21F). Dr. Barr also indicated that she was easily agitated (Exhibit 21F). This

assessment of the claimant's ability to perform work-related mental
tasks appears to be based solely on her subjective reports regarding
her poor concentration, impulse control, and interactions with
others. In addition, the assessment is inconsistent with the medical
evidence in the record, including Centerstone treatment notes for
2010. For example, there is no evidence that Dr. Barr performed
any objective tests to measure the claimant's cognitive abilities and
noted that she exhibited normal intelligence in the mental status
examinations of her (*See generally* Exhibit 20F). In addition, there
is no evidence that the claimant has ongoing difficulties relating to
or interacting with her providers. For this reason, the undersigned
gives Dr. Barr's opinion little weight.

TR 16, 22-23 (underlining and italics original).

Plaintiff takes issue with the fact that the ALJ omitted Dr. Barr's finding that Plaintiff

was "markedly limited [in her] ability to respond appropriately to work situations and changes in

a routine work setting." Docket No 12-1 at 7; TR 644. Plaintiff cites no authority supporting the

proposition that the ALJ must discuss every finding from every evaluation. As can be seen, the

ALJ discussed Dr. Barr's treatment of, and opinions concerning, Plaintiff, and credited Plaintiff

with appropriate limitations based on that treatment and those opinions, clearly demonstrating

that he was aware of the opinion at issue. As can also be also be seen, the ALJ discussed the

weight he accorded to Dr. Barr's opinions and the reasons therefor.

As the ALJ explained, Dr. Barr's opinion was based on Plaintiff's subjective reports

rather than objective tests, and it was inconsistent with the evidence of record, including

Centerstone treatment notes. *Id.* Per the Regulations, the ALJ is not required to give controlling

weight to an evaluation when that evaluation is inconsistent with, or unsupported by, other

substantial evidence in the record. *See* 20 CFR § 416.927(d)(2) and 20 CFR § 404.1527(d)(2).

Instead, when there is contradictory evidence, the opinion is weighed against the contradictory

evidence under the criteria listed above, and the final decision regarding the weight to be given to the opinion lies with the Commissioner. *Id.*, *see also* 20 CFR § 416.927(e)(2).

The ALJ explicitly discussed Dr. Barr's treatment of, and opinions concerning, Plaintiff, and explained the weight he accorded to Dr. Barr's opinions and the reasons therefor. The ALJ's determination was supported by substantial evidence and the Regulations do not require more. The ALJ's evaluation of, and weight accorded to, the opinion of Dr. Barr was proper; Plaintiff's argument on this point fails.

## 2. Evaluation of the Evidence Regarding Plaintiff's Mental Health Problems

Plaintiff argues that the ALJ erroneously failed to properly consider her mental health problems. Docket No. 12-1 at 7-9. First, Plaintiff contends that the ALJ erroneously evaluated her Clinically Related Group ("CRG") assessments because, although her CRG assessments found her to have moderate mental limitations in several regards, "a close reading of the definition of Moderate on a CRG form equates to the Social Security Administration's definition of a Marked limitation," such that the ALJ essentially should have considered them as "marked." *Id.* at 7-8. Plaintiff further contends that the ALJ erroneously assumed that her "lack of work history was due to lack of motivation, rather than her long, well-documented history of mental illness." *Id.* Plaintiff asserts that her "mental illness manifests itself in self-destructive behavior as well as violent behavior toward others" and argues that, "[i]t is particularly important to give controlling weight to a treating psychiatrist when a claimant poses not only a threat to herself, but a threat to co-workers and the public as well." *Id.* Plaintiff maintains, "To attempt to put [her] into the workforce would put not only [her] but those around her in danger as well." *Id.* at 9.

Plaintiff additionally emphasizes that her Global Assessment of Functioning ("GAF")

scores range from 40-50, "which indicate[s] severe mental impairments and limitations." *Id.*

Plaintiff notes that "generally, it is considered by vocational experts that a person with a GAF

score of 50 or below is unemployable." *Id.* Plaintiff adds that her history of substance abuse,

which she reports as "currently in remission," is a symptom of her mental illness, and is therefore

not relevant to her inability to work. *Id.*

Defendant contends that Plaintiff's comparison of the CRG and SSA standards is

inapposite because the definitions of "moderate" and "marked" are specific to their respective

institutions, and do not necessarily correspond to each other. Docket No. 17 at 11-12. Defendant

argues that it is the ALJ's duty to assess Plaintiff's ability to function given her alleged

impairments (not explain whether the CRG's definition of "moderate" equates to the SSA's

definition of "moderate" or "marked"), and that the ALJ in the case at bar properly did so by

analyzing, *inter alia*, the "moderate" and "marked" findings of the reports and the treatment

notes on which they were based. *Id.* Defendant notes that the ALJ's decision turned, not on the

"moderate" CRG findings or the definition of "moderate," but on the inconsistency of Plaintiff's

treatment notes and functional limitations with Dr. Barr's stated opinions, and on the fact that Dr.

Barr's findings were not based on objective testing. *Id.* at 13.

Defendant also addresses Plaintiff's contention that the ALJ erroneously assumed that her

lack of work history was due to lack of motivation, rather than mental illness. *Id.* at 14.

Defendant notes that the ALJ made this statement[4] in the context of his credibility analysis of

---

[4] The ALJ's statement at issue is as follows:

> In addition, the claimant has never engaged in work at or above
> substantial gainful activity, which raises some questions as to
> whether the current unemployment is truly the result of medical

Plaintiff's statements, rather than in his assessing of Dr. Barr's opinion. *Id.* Defendant argues

that the ALJ's statement was accurate and supported by the evidence of record. *Id.*

Finally, Defendant responds to Plaintiff's argument that persons with GAF scores of 50

or below are "unemployable." *Id.* at 15. Defendant characterizes this contention as

"unsupported" and " blatantly inconsistent with the law of the Sixth Circuit, which indicates that

a GAF score of 40 or 45 is not necessarily disabling." *Id.*, *citing Deboard v. Comm'r of Soc.*

*Sec.*, No 05-6854, 2006 WL 3690637, at *4 (6th Cir. Dec. 15, 2006); *Smith v. Comm'r of Soc.*

*Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). Defendant notes that "the GAF scale . . . does not have a

direct correlation to the severity requirements in [the SSA's] mental disorder listings," and

argues that the ALJ does not need to give much credence to GAF scores, but rather, must analyze

the medical evidence as a whole. *Id.* (citations omitted). Defendant contends that the ALJ

appropriately did just that. *Id.*

Addressing Plaintiff's first contention - that the ALJ erroneously evaluated her CRG

assessments because the CRG's definition of moderate essentially equates to the SSA's

definition of marked, such that the ALJ should have considered the moderate limitations in her

CRG's to be marked limitations for SSA purposes - Plaintiff cites no authority either for her

equation of the CRG's definition of moderate to the SSA's definition of marked, or for the

proposition that the ALJ must somehow interpret definitions from sources other than the SSA

and determine how those sources compare to those of the SSA, and the undersigned can find no

such authority. Absent such authority, Plaintiff cannot sustain this contention.

---

problems (Exhibit 5D).

TR 24.

Turning to Plaintiff's next contention - that the ALJ erroneously assumed that her lack of work history was due to lack of motivation, rather than mental illness - the ALJ discussed at length Plaintiff's mental illness and its prescribed medication, treatment, manifestation, limitation, and effects, thereby demonstrating that the ALJ was acutely aware of Plaintiff's mental illness and resultant limitations. *See* TR 15- 24. In fact, after discussing Plaintiff's mental illness, its treatment, and its effects, the ALJ explicitly found that "the medical evidence shows that the claimant has both bipolar disorder and anxiety disorder that require ongoing medication management." TR 23. As can be seen throughout the ALJ's articulated rationale, he was not only aware of, but properly considered, Plaintiff's mental illness and resultant limitations.

Moreover, the sentence about which Plaintiff takes issue ("*In addition*, the claimant has never engaged in work at or above substantial gainful activity, which raises some questions as to whether the current unemployment is truly the result of medical problems.") was made during the ALJ's evaluation of Plaintiff's credibility, and was given as an *additional* reason for discounting her credibility; as will be discussed in greater detail below, it was not the sole reason for the ALJ's determination. Plaintiff's assertion on this point does not provide grounds for reversal or remand.

Plaintiff's third contention - that it is particularly important to give controlling weight to a treating psychiatrist when, as is the current situation, a claimant poses not only a threat to herself, but to her co-workers and the public as well - is likewise unsupported by authority. The Regulations set forth factors to be considered by an ALJ when reviewing the evidence and determining, *inter alia*, the weight to be accorded to the medical opinions of record. As best the

undersigned can discern, none of the factors set forth in the Regulations is "consider if the claimant poses a threat to herself, her co-workers, and/or the public," and Plaintiff has failed to cite to any authority to the contrary. Absent such authority, this point does not constitute grounds for reversal or remand, particularly in light of the fact that, as was discussed above, the ALJ properly evaluated Dr. Barr's opinion.

Plaintiff's final contention on this point[5] - that she is unemployable because her GAF scores range from 40-50 - is likewise unavailing, as GAF scores are not determinative of disability for Social Security purposes. In fact, the SSA has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings." *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (August 21, 2000). Although "the GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence." *Alvarez v. Barhart*, 2002 WL 31466411, at *8 (W.D.Tex. October 2, 2002). Nor is a GAF score determinative of an individual's RFC assessment. *Id.* ("A GAF score is not a rating typically relied upon with respect to assessing an individual's RFC under the Act."); *see also Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002)(GAF score is not essential in assessing RFC).

---

[5] Plaintiff also conclusorily states that her history of substance abuse is a symptom of her mental illness and therefore not relevant to her inability to work. Docket No. 12-1 at 9. Plaintiff's statement is just that - a statement - and not an argument that the Court needs to analyze.

For the reasons discussed above, the ALJ properly evaluated Plaintiff's mental illness and impairments. Accordingly, Plaintiff cannot prevail any of her contentions within this statement of error.

### 3.  Credibility of Plaintiff's Statements

Plaintiff contends that the ALJ failed to properly assess the credibility of her statements. Docket No. 12-1 at 10. Specifically, Plaintiff maintains that the ALJ insufficiently made a single, conclusory statement that he used the criteria outlined in SSR 96-7P in reaching his decision, rather than specifically stating the weight he gave Plaintiff's statements and the reasons therefor. *Id.* Plaintiff additionally asserts that the ALJ addressed some of her statements, but not others, and argues that the ALJ erroneously relied on the fact that she can perform some activity on a minimal basis, because her ability to perform simple functions does not necessarily indicate that she can perform substantial gainful activity. *Id.* at 11-12. Plaintiff contends that the ALJ erroneously detracted from her credibility "based on the fact that she has been able to perform some activity on a very minimal basis," and that, "[b]y focusing on these few activities of daily living, the ALJ ignored the medical evidence," such that his decision is not supported by substantial evidence. *Id.* at 12.

Defendant responds that, contrary to Plaintiff's assertion, the ALJ specifically discussed Plaintiff's credibility in two portions of his opinion. Docket No. 17 at 16-18, *citing* TR 17-18, 23-24. Defendant argues that the ALJ, in his decition, explicitly discussed the evidence upon which he based his credibility finding, explained his rationale for discounting Plaintiff's credibility, and actually underlined his specific credibility finding. *Id.* Defendant contends that the ALJ's stated reasons for discounting Plaintiff's credibility "are proper reasons for discounting

a claimant's credibility and are supported by the record (as shown by the ALJ's specific citations to the exhibits)." *Id.* at 18.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations:

> [S]ubjective allegations of disabling symptoms. . . cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology the ALJ, may distrust a claimant's allegations ... if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

When analyzing subjective complaints, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 CFR § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not

credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ ultimately found that "[t]he claimant's testimony regarding the nature, severity, and persistence of his [*sic*] symptoms is not fully credible." TR 23. In so finding, the ALJ articulated that:

> The claimant alleges that her physical impairments interfere with her ability to lift, sit, stand, walk, bend, reach, squat, kneel and see (Exhibits 5E & 10E). She stated that fluctuations in her blood sugar levels cause fatigue and weakness as well as poor vision and concentration (Exhibits 5E & 10E). She acknowledged that she is able to perform self-care and personal hygiene tasks but only when she is motivated to do so (Exhibits 5E & 10E). She reported that she relies on her mother to prepare meals and perform household chores but that she shops for supplies and clothes for her daughter on her own (Exhibits 5E & 10E). She stated that she drives about twice each month and that she manages her own finances (Exhibits 5E & 10E). At the hearing, the claimant estimated that she is able to stand for 15 minutes or walk for 15 minutes at a time.

> In addition, she alleges that her mental impairments interfere with her ability to remember, concentrate, complete tasks, understand, follow directions, and get along with others (Exhibit 10E). She reported that she frequently acts out, becomes easily angered, damages property, has difficulty controlling her emotions, and either sleeps too much or too little (Exhibits 5E & 10E). She stated that she rarely completes chores or other tasks that she starts and needs her mother's assistance to care for her child (Exhibits 5E & 10E). She testified that she experiences panic attacks 2 or 3 times each day, each lasting from 3 to 15 minutes. She explained at the hearing that she sleeps for 15 hours each day and spends most of each day in bed. At the hearing, she also described her history of violent outbursts, such as hitting someone with rocks, running over someone with her car, and hitting a coworker with a plate.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

. . .

. . . At the hearing, the claimant acknowledged her extensive arrest record. She was jailed for a few days in 2004 for assaulting an officer, she was arrested in 2005 for sale and possession of cocaine, she violated her parole in 2006 by selling cocaine, she was arrested for conspiracy and attempted sale of oxycodone in 2008, and she pled guilty on a charge of hit-and-run in 2010. Significantly, she had a positive urine drug screen for cocaine on September 23, 2009, suggesting that she may not have remained drug-free for the entire period since her filing date (Exhibit 18F/11-12).

In addition, the claimant has never engaged in work at or above substantial gainful activity, which raises some questions as to whether the current unemployment is truly the result of medical problems (Exhibit 5D).

Further, claimant appears to have consciously attempted to portray limitations than [*sic*] are not actually present in order to increase the chance of obtaining benefits. For example, although she explained at the hearing that she was unable to work because she needs to see doctors 3 days each week, the record does not support this claim. For example, in April 2010, the medical evidence shows that she underwent a urological procedure on April 22, and had an office visit with her psychiatrist on April 21 (Exhibit 20F/4-5; Exhibit 22F/3-4). In May 2010, she had office visits with her primary care provider on May 7 and May 22 (Exhibit 19F/3-4). In June 2010, she visited her gynecologist on June 5 and underwent a pelvic sonogram on June 22, but failed to keep her June 2 psychiatric appointment (Exhibit 20F/3; Exhibit 23F/3-4). This evidence reflects poorly on the claimant's credibility.

TR 17-18, 23-24, *citing* TR 154-59, 192-202, 220-30, 486-90, 542-44, 602-03, 618, 619-20,

648-49, 654-55 (emphasis in original).

As can be seen, the ALJ's decision specifically addresses not only the medical evidence,

but also Plaintiff's testimony and her subjective claims, indicating that these factors were considered. TR 17-18, 23-24. It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that "[t]he claimant's testimony regarding the nature, severity, and persistence of his [*sic*] symptoms is not fully credible." TR 23. The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.

Therefore, this claim fails.

**4. Consideration of Plaintiff's Anxiety Disorder**

Plaintiff argues that the ALJ failed to consider whether her anxiety disorder was a severe impairment, and therefore failed to consider all of her severe impairments. Docket No. 12-1 at 6. Regarding the severity of her anxiety disorder, Plaintiff argues that: (1) she testified to having daily panic attacks lasting up to 15 minutes; (2) Centerstone records reveal a diagnosis of generalized anxiety disorder; and (3) a Centerstone CRG noted panic attacks with increased stressors. *Id.*, *citing* TR 437, 389, 442. She notes that the ALJ did not find her generalized anxiety disorder to be a severe impairment, and argues that he erred by failing to state his reasoning for this finding. *Id.*

Defendant responds that the ALJ satisfied the step two requirements because he found that Plaintiff did, in fact, have a severe combination of impairments. Docket No. 17 at 6. Defendant contends that "once a claimant surpasses the step two threshold with at least one impairment or a combination of several impairments, the evidence for all of her alleged impairments (whether found to be individually 'severe' or not) will be considered." *Id.* Defendant notes that once the ALJ determined that Plaintiff had a severe combination of impairments, he proceeded to consider (and discuss in detail) all of the evidence of record (including Plaintiff's anxiety) as he worked his way through the sequential evaluation process. *Id.* at 6-8, *citing* TR 15-24.

Defendant contends that, under Sixth Circuit precedent, the ALJ's failure to find Plaintiff's anxiety to be a severe impairment is harmless error because he found that Plaintiff suffered from a combination of severe impairments, he considered all of the evidence of record

during the sequential evaluation process, and he completed the sequential evaluation process. *Id.*

Defendant notes that "the ALJ mentioned and discussed Plaintiff's anxiety disorder in no fewer

than four places in his decision (Tr. 16, 21, 22, 23), and he analyzed whether Plaintiff met Listing

12.06 - the Listing for anxiety-related disorders (Tr. 15)." *Id.* at 8. Defendant argues that despite

the ALJ's failure to find her anxiety disorder to be severe, Plaintiff received a thorough analysis

of her anxiety disorder and how it relates to her functional abilities, because the ALJ reviewed

and discussed all of her records concerning her anxiety disorder and other relevant impairments

at step three of the sequential evaluation and beyond, which led to a finding regarding a Listing

specific to anxiety disorders and an RFC that included relevant mental limitations. *Id.* at 8-9,

*citing* TR 15-18.

    The Regulations require that the ALJ state "the findings of fact and the reasons for the

decision." 20 CFR § 416.1453(a). As the Sixth Circuit has noted, "[t]o require a more elaborate

articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Secretary,* 833

F.2d 589, 592 (6th Cir. 1987). The ALJ complied with the regulation; he specifically articulated

his findings of fact, and, using the information in the record, provided the rationale for his

decision. TR 15-18. While Plaintiff is correct that the ALJ did not specifically state that her

anxiety disorder was individually "severe," the ALJ provided a thorough analysis of her mental

impairments (including her anxiety) and how they relate to her functional abilities:

> The claimant's mental impairment does not meet or medically
> equal the criteria of listings 12.04, 12.06, and 12.09. In making
> this finding, the undersigned has considered whether the
> "paragraph B" criteria are satisfied. To satisfy the "paragraph B"
> criteria, the mental impairment must result in at least two of the
> following: marked restriction of activities of daily living; marked
> difficulties in maintaining social functioning; marked difficulties in

maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

. . .

With regard to concentration, persistence or pace, the claimant has mild difficulties. There is no objective evidence that the claimant has any deficit in concentration, persistence, or pace. Although the claimant's current psychiatrist opined that the claimant had diminished cognitive functioning due to her anxiety disorder and poor impulse control, his treatment notes consistently show that he evaluated her as functioning at the average intellectual level (Exhibit 21F; *see generally* Exhibit 20F). In addition, there is no evidence that he performed any of the standard tests for memory and concentration during his mental status examinations of the claimant, such as serial subtractions, suggesting that he did not think the tests would reveal significant deficits (*See generally* Exhibit 20F). Nevertheless, it is reasonable to conclude that the claimant's mental disorders could cause some limitation related to her ability to initiate, sustain, and complete tasks. Accordingly, the undersigned finds that the claimant has mild limitation in concentration, persistence, or pace.

There is no evidence that the claimant has experienced any episodes of decompensation, which have been of extended duration. The claimant required emergency care for a suicide attempt on May 15, 2006, when she tried to cut her wrists (Exhibit 2F/23-31). At that time, she was referred for specialized mental health care and apparently was place [sic] on suicide watch while in jail (*See* Exhibit 4F/33-40). She initiated outpatient mental health care on May 22, 2006, at which time she was diagnosed as having mood disorder secondary to cocaine dependence (Exhibit 4F/22-40). She did not return for any subsequent appointments, suggesting that she had no further symptoms (Exhibit 4F/6). She was discharged from care on September 21, 2006 (Exhibit 4F/6). This episode lasted for a week at the most and, therefore, was not long enough to met the requirement for "extended duration." There is no other evidence that the claimant has experienced any episodes of decompensation.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

. . .

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the . . . residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

. . .

In addition, she alleges that her mental impairments interfere with her ability to remember, concentrate, complete tasks, understand, follow directions, and get along with others (Exhibit 10E). She reported that she frequently acts out, becomes easily angered, damages property, has difficulty controlling her emotions, and either sleeps too much or too little (Exhibits 5E & 10E). She stated that she rarely completes chores or other tasks that she starts and needs her mother's assistance to care for her child (Exhibits 5E & 10E). She testified that she experiences panic attacks 2 or 3 times each day, each lasting from 3 to 15 minutes. She explained at the hearing that she sleeps for 15 hours each day and spends most of each day in bed. At the hearing, she also described her history of violent outbursts, such as hitting someone with rocks, running over someone with her car, and hitting a coworker with a plate.

TR 15-17 (underlining and italics original), *citing* TR 192-202, 220-30, 253-341, 358-404, 616-40, 641-45.

After addressing Plaintiff's anxiety, the ALJ ultimately concluded:

In sum, the medical evidence shows that the claimant has both bipolar disorder and anxiety disorder that require ongoing medication management. She is routinely non-compliant with her

> medication regimen, however, and frequently misses scheduled appointments for medication management. Nevertheless, her symptoms are not so severe that she is precluded from functioning independently, appropriately, and effectively on a sustained basis, so long as she is performs [*sic*] only simple mental work tasks with limited contact and interaction with co-workers, the public, and supervisors.

TR 23.

As can be seen, the ALJ assessed the medical evidence and testimony regarding Plaintiff's anxiety disorder and reached an explicit conclusion regarding Plaintiff's mental impairments and their effects on her functional capacity. TR 15-18. Accordingly, Plaintiff's argument fails.

## 5. Residual Functional Capacity ("RFC") Determination

Plaintiff contends that, in making his RFC determination, the ALJ erroneously ". . .only considered the limited parts of the evidence that supported a finding of not disabled." Docket No. 12-1 at 12. Plaintiff argues that the ALJ "failed to consider all probative evidence," considered only the evidence that supported his conclusion, and overlooked the evidence that "fully established that the claimant was disabled on October 6, 2008." *Id.* at 13.

Defendant responds that Plaintiff provides no "citation to the evidence or specific claim about which portion of the RFC was incorrect" or which "'probative evidence' was ignored." Docket No. 17 at 20. Defendant further responds that Plaintiff "never argues why the evidence supporting the ALJ's decision was not proper." *Id.* at 20-21. Defendant argues that the ALJ "thoroughly discussed and analyzed the entire record, which is evidenced by the nine-page, in-depth analysis of the medical evidence," and notes that he "gave sound reasons for any evidence he rejected." *Id.*, *citing* TR 15-24. Defendant reiterates that the ALJ's decision was supported by

substantial evidence and should be affirmed. *Id.*

As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229).

The record here contains much medical and testimonial evidence, all of which was properly considered by the ALJ, and all of which constitutes "substantial evidence." Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that the claimant has not been disabled, as defined in the Social Security Act, since the date her application was filed. TR 25. As explained above, the ALJ properly considered the objective and testimonial evidence of record; he reached a reasoned decision regarding that evidence, Plaintiff's credibility, and Plaintiff's disability; he explained his rationale for each finding; and each finding was supported by substantial evidence.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ complied with the Regulations, and his decision was properly supported by "substantial evidence;" the ALJ's

decision, therefore, must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

29